## IN THE CIRCUIT COURT FOR
## PRINCE GEORGE'S COUNTY MARYLAND

| | | |
|---|---|---|
| **GORMAN BROWN**<br>**9407 KYNASTON COURT**<br>**BOWIE MD 20721**<br>　　　**PLAINTIFF,** | ) ) ) ) ) | |
| **MAR-C HOLLAND**<br>**601 FOREST WALK LANE #201**<br>**ODENTON, MD 21113**<br>　　　**PLAINTIFF,** | ) ) ) ) ) | |
| **DONNA BUSSEY**<br>**15303 TEWKESBURY PLACE**<br>**UPPER MARLBORO, MD 20774**<br>　　　**PLAINTIFF,** | ) ) ) ) ) | |
| **V.** | ) ) | **CIVIL ACTION NO.:** CAL18-22180 |
| **PRINCE GEORGE'S COUNTY**<br>**BOARD OF EDUCATION**<br>**12401 SCHOOL LANE**<br>**UPPER MARLBORO, MD 20774**<br>　　　**DEFENDANT,** | ) ) ) ) ) ) | **COMPLAINT & JURY DEMAND** |
| **DEPARTMENT OF SECURITY SERVICES**<br>**507 LARGO ROAD**<br>**LANDOVER, MD 20774**<br>　　　**DEFENDANT.** | ) ) ) ) ) | |

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiffs, Gorman Brown, Mar-c Holland, Donna Bussey, by and through their attorney, Erick R. Tyrone, of The Tyrone Law Group, LLC, and hereby files this Complaint against Defendant Board of Education of Prince George's County and Defendant, Department of Security Services of Prince George's County, Maryland, and in support thereof states as follows:

### PARTIES

1.    Plaintiff, Gorman Brown ("Dr. Brown") is an adult resident of the State of Maryland and an employee of the Prince George's County School Board working at Herbert H. Flowers High School, who is over the age of eighteen (18); therefore, has reached the age of majority.

2.    Plaintiff, Mar-c Holland ("Holland") is an adult resident of the State of Maryland and an employee of the Prince George's County School Board working at Herbert H. Flowers High School, who is over the age of eighteen (18); therefore, has reached the age of majority.

3.    Plaintiff, Donna Bussey ("Bussey") is an adult resident of the State of Maryland and an employee of the Prince George's County School Board working at Herbert H. Flowers High School, who is over the age of eighteen (18); therefore, has reached the age of majority.

4.    Defendant Board of Education of Prince George's County ("Board of Education") is and was, at all times relevant, a government entity operating under the laws of the State of Maryland, with its principal office and principal place of business in Prince George's County, Maryland. Defendant Board of Education, operates the Prince George's County Public School System, including Flowers High School at 10001 Ardwick Ardmore Road, Springdale, Maryland, through its officers, agents, employees and representatives, and is responsible for the safety and well-being of the staff and students at Flowers High School, including Plaintiffs.

5.    Defendant, The Department of Security Services ("Security Services") of Prince George's County is and was, at all times relevant, a government entity operating under the laws of the State of Maryland, with its principal office and principal place of business in Prince George's County, Maryland[1]. Defendant Security Services, operates the Security and security cameras

---

[1] "The mission of the Department of Security Services for Prince George's county Public Schools is to provide a safe and orderly learning environment that reasonably ensures the safety and security of students, faculty and staff, visitors and parents. Security Services also attempts to ensure that students and staff have a safe and secure learning environment in which to learn and teach, enabling each student to achieve his or her maximum potential and future

within all Prince George's County Public Schools, including Flowers High School at 10001 Ardwick Ardmore Road, Springdale, Maryland, through its officers, agents, employees and representatives, and is responsible for the safety and well-being of the staff and students at Flowers High School, including Plaintiff's.

6.     Defendant Board maintains sufficient practical knowledge of and control over Defendant Security Services to be held liable for the actions of Defendant Security Services because Security Services employees are also employees of Defendant Board.

## JURISDICTION AND VENUE

7.     Venue is proper as the incident occurred in Prince George's County, Maryland and Defendants conduct business in Prince George's County, Maryland.

8.     Personal jurisdiction of this Court is invoked pursuant to MD. Code Ann., CTS. & Jud. Proc, §§ 6-102 and 6-103 *et seq*.

9.     Subject matter jurisdiction of this Court is invoked pursuant to MD. Code Ann., Cts. & Jud. Proc §§ 1-501, 4-402, *et seq.,* as Plaintiff is seeking damages in excess of $30,000.00.

10.     Pursuant to Maryland Rule § 2-305, Plaintiff is seeking damages in excess of $75,000.00.

11.     Plaintiff provided timely notice to Defendants, Board of Education and Defendant Security Services, via Certified Mail and has complied with all requirements of the Local Government Tort Claims Act, See Md. Code Ann., Cts. & Jud Proc. § 5-302 *et seq*.

12.     Plaintiff hereby demands a jury trial on the matters detailed below.

## STATEMENT OF FACTS

---

success. The Department of Security Services supports 204 schools, including special schools, academies, and offices and wants all students, faculty, and other employees will be educated in learning environments, as well as working environments that are safe, drug-free, and conducive to learning." http://www.pgcps.org/security/

**Plaintiff, Dr. Gorman Brown**

13.     Plaintiff alleges and incorporates herein by reference each and every allegation in the aforementioned paragraphs as fully set forth herein.

14.     Plaintiff in this case, Dr. Gorman Brown ("Dr. Brown") has been an educator with the Prince George's County Public School System for twenty-one (21) years.

15.     Dr. Brown has held various positions: long-term substitute teacher, Math/Science instructor, Peer Mediation Coordinator, Assistant Principal and has served in the role of Principal since December, 2005.

16.     Dr. Brown has served in his current assignment, Principal at Charles Herbert Flowers High School, since July, 2012.

17.     During that time Dr. Brown has served as an official Mentor Principal to seven current and former principals, acquired a National Mentor Principal Certification, served as a supervising principal to two resident principals and been conferred with a Doctorate Degree in Educational Leadership.

18.     Dr. Brown has recently been tasked with the responsibility to draft policy for the whole of Prince George's County regarding the systemic redesign of grading and reporting within the district.

19.     Dr. Brown, commonly, spends ten to twelve (10-12) hours a day at the school; therefore, his children KaMar (currently 16), Imani (currently 12), and Gorman (currently 9), spent an exorbitant amount of time in the Principal's office before and after their respective school days.

20.     Most of their (Dr. Brown's children) homework was done in Dr. Brown's office, and since there was rarely time to go home prior to the beginning of evening activities, both Gorman and Imani regularly changed clothes for their extra-curricular activities (Basketball,

Football, Gymnastics, Cheerleading, Dance) while in Dr. Brown's office, including Dr. Brown, who also served the community as a youth coach.

21.     The Principal's Suite was designed with a shower and bathroom that Dr. Brown often used for school related activities during the school day and evening, because Dr. Brown believed the Principal's office was a safe space devoid of any hidden surveillance devices.

22.     The Principal's Office at Flowers High School is a place where staff and Central Office employees assigned to Flowers High School have held meetings in the belief that there was privacy due to the fact that very personal information that is sensitive in nature is often divulged in this office.

23.     In fact, particularly sensitive conversations have been moved into the Principal's Office just because of the expectation that no one would be watching or listening in on the private meetings; emotional outbursts from students, parents, and staff members in crisis have occurred in this office, and conflict resolution sessions between colleagues and administration occur regularly.

24.     Normal functions that require confidentiality, like evaluations, disciplinary and employment conversations occur throughout the school year and Central Office staff meet in the Principal's office to discuss issues that are sensitive in nature because of the perceived privacy associated with this office.

25.     Students and their family members often visit the Principal's Office in need for private conversations and families in crisis. Families that are in crisis often attempt to work through their challenges in the Principal's office.

26.     Students are brought to the Principal's Office before for particularly private meetings, like when Dr. Brown has to sit-in for the parents and protect a student's right when law enforcement authorities attempt to interview a student at the High School.

27.     Students have been brought to the Principal's Office in order to deliver bad news, such as the loss of a parent, sibling or loved one because there was an expectation that anyone is free to express the whole gamut of emotions in this office without being recorded.

28.     On April 13, 2018 this expectation of privacy was determined to be an illusion as there had not been privacy in the Private Principal's Office of Flowers High School since July, 2016, when Defendant Board authorized Defendant Security Services placed a hidden surveillance camera in the Principal's Office of Flowers High School.

29.     As of the date of this filing, Defendants Prince George's County School Board and Security Services have not kept the school location confidential as colleagues and community members have made it known that they are aware of what school the surveillance camera was placed and even warned Plaintiffs that there are ramifications for bringing in outside counsel to represent their respective interests.

30.     After twenty-one (21) years of dedicated service to the Prince George's County School System, the knowledge that someone authorized hidden surveillance to be placed in Dr. Brown's office has left him unbalanced, paranoid with fits of insomnia due to this invasion of his privacy.

31.     This violation has caused problems in his marital household, as his wife has also been affected by the stress of this invasion of privacy, causing a loss of consortium.

32.     Dr. Brown has sought assistance from mental health professionals who has required that Dr. Brown reduce his workload and stress intake, which is extremely difficult during the end of the year having to handle the additional responsibility of graduation and winding down the school year.

33.    Dr. Brown is seeking psychotherapy and pharmaceutical management to complete day-to-day responsibilities.

**Plaintiff, Mar-c Holland**

34.    Resident Holland ("Holland") has been serving as an educator for over fifteen (15) years, beginning in 2003 as a 7th grade Reading/Language Arts teacher in the Prince George's County Public School System.

35.    Holland received a Bachelor of Arts in English from Morgan State University and a Masters in Educational Leadership from Bowie State University.

36.    After a variety of teaching experiences in the middle, high school and post-secondary educational levels for 12 years, Holland became an Assistant Principal at Gwynn Park High School in April, 2015.

37.    After three (3) successful years as an Assistant Principal, Holland was accepted into her current position as Resident Principal of Flowers High School, under the supervision of Dr. Gorman Brown beginning on July 1, 2017[2].

38.    Holland's shadowing period began at Flowers High School on July 1, 2017 and lasted through December 22, 2017.

39.    During this shadowing period, Holland was in and out of Dr. Brown's office and observed the following: Dr. Brown conducting meetings of confidentiality with the administrative team around staffing, professional development, teacher evaluations, parent conferences (in which

---

[2] Since all assistant principals vary in their learning curve and previous experiences, interns must participate in two phases of their internship 1) Shadowing and 2) an Intern Period. Due to the complexity of readiness level, it is at the discretion of the supervising principal in collaboration with the Supervisor of School Leadership Programs, Instructional Director and/or Associate Supervisor, and the Leadership Development Coach to determine the length of each. The intern will experience gradually increased responsibilities over the course of 10 months. During the Shadowing Phase, the intern will act primarily as an observer to the Principal and the Assistant Principals in the building. Over time, there will be a transition of primary leadership in the school from the Supervising Principal to the intern. It is paramount that the supervising principal model and provide experiences for all aspects of the Principal role to enable the intern to be an effective school administrator.

parents would share confidential information); student conferences (disciplinary responses); meeting with staff about performance issues or confidentiality purposes; meeting with community members about business partnerships; several private phone conversations with Central Office; staff and parents.

40.    During Phase Two, January 1, 2018-April 30, 2018, Holland operated Flowers High School on her own, conducting the same business that was modeled by Dr. Brown.

41.    During Phase Two, Holland held weekly administrative team meetings; discussed teacher evaluations, staffing, and budget issues in the Principal's Office; held confidential staff, parent, and phone conferences; supervised support group meetings with security, custodial staff and cafeteria personnel; and even held LDT (Leadership Development Team) meetings about Holland's professional development in the acting role of the Principal with Central Office personnel.

42.    During Holland's Phase Two Intern Period, she would regularly spend Ten-Hour days preparing for parent presentations, budget meetings, student banquets, open house, and college fairs, etc.

43.    In preparing for the multitude of events tasked to the Resident Principal, sometimes Holland would change her clothes in the office as Holland believed this Principal's Office to be a private space.

44.    The Principal's Office Suite contained a personal bathroom and shower for the Principal and Principal's Secretary to use at their discretion; the office could only be accessed by the three people with this particular key: the Principal, the Principal's Secretary and the Building Supervisor.

45.     Both doors leading directly in the Principal's Office lock automatically and there is no way to manually unlock the door, from the inside or outside, without one of the three aforementioned keys.

46.     On Friday, April 13, 2018, Holland received a call from Assistant Principal, Mr. Ronald Miller, Jr. ("Mr. Miller"), who was helping a student scan the student parking lot because their vehicle had been involved in a hit and run at or around 8:25 am.

47.     As he was trying to use the IP addressed networked cameras that cover the interior and exterior of the school building he selected a camera titled, "Main Lobby" hoping it would give the angle perspective or view of the main bus parking lot and possibly an edge of the student parking lot.

48.     Instead of the mail lobby, what appeared on screen was a live feed of the Principal's office, where Holland was seated at her desk working at the time; Mr. Miller immediately called Holland to inform her of the presence of a surveillance camera and ask if she was aware of the presence of a camera in the Principal's Office.

49.     Holland began looking around the room and noticed something in the back corner of the office ceiling that resembled a smoke detector. After receiving the IP address from Mr. Miller, Holland pulled up the cameras on her office computer, entered the IP address and saw herself live on camera.

50.     Holland immediately contacted her Supervising Principal, Dr. Brown, Flowers High School Principal and asked him whether he was aware that there was a camera in his office.

51.     Being unaware of a hidden surveillance camera placed in his office, Dr. Brown came to Flowers High School to investigate.

52.     None of the members of the team (Dr. Brown, Holland or Bussey) were informed of the placement or presence of this camera, resulting in great concerns around confidentiality of Dr. Brown and Resident Holland as the instructional leaders of the building that have the duty of maintaining this confidentiality on behalf of the parents, staff, students of the Flowers High School community.

53.     In addition, the camera was hidden amongst the other camera views having been intentionally titled, "Main Lobby", as opposed to the properly labeled, "Principal's Office."

54.     More troubling was the fact that the video had been stored going back as far as November 28, 2016 because all other school cameras only stored footage for 30 days before the footage is recorded over by new footage.

55.     All cameras within Flowers High School only recorded and kept video surveillance for 30 days, after which it would be deleted upon recording of new video. Any video not specifically selected to be maintained, would be subject to deletion after 30 days; however, this camera was programmed to record and store the video for over 15 months.

56.     On April 13, 2018, the Plaintiff's were able to find stored recordings that dated back as far as August 2016, which is 18 months.

57.     All administration, staff, students, parents and community stakeholders were under the impression that there was privacy within the Principal's Office and that the Office was a safe space free from hidden surveillance cameras.

**Plaintiff, Donna Bussey**

58.     Donna Bussey, ("Bussey") has been a Secretary II with the Prince George's County Public School System for over 20 years, since February of 1998. Bussey worked at two previous

schools, Avalon Elementary School and Cool Spring Elementary School, before arriving at Flowers High School during the summer of 2001.

59.    As the Secretary II at the high school level, Bussey's main duties are to support the Principal, directly and serve as Office Manager for all secretarial staff.

60.    Bussey handles matters of a confidential nature on a daily basis, which include personnel issues, student and parental concerns, as well as relieving the Principal from many of their administrative duties.

61.    The sensitive nature of the position requires Bussey to work with the Principal in their office, on a daily basis; they meet daily to discuss parent phone calls, area office concerns, student concerns, staff leave, staff evaluations, etc.

62.    As the Office Manager, Bussey oversees the day to day clerical operations in all offices, which includes, the Main Office, Attendance Office, and Guidance Office; supervises a total of six secretaries at Flowers High School; Bussey is responsible for the submission of payroll for the entire school staff; serves as back up to any secretary during their absence, which includes, but is not limited to student registration, attendance concerns, and student transcripts; additionally, Bussey regularly met in Dr. Brown's office with the secretarial staff to discuss performance issues and disciplinary actions.

63.    Bussey has used the Principal's Office when her personal life was in crisis during several family and personal issues that caused Bussey to have emotional outbursts in which Dr. Brown personally provided Bussey counsel as well as Bussey's individual staff evaluation and personnel concerns.

64.    As of 2006, Bussey has served as the Co–Sponsor of the award winning, highly claimed, and respected Charles H. Flowers Pom and Dance Team.

65.    There are twenty-six (26) members on the 2017-2018 team. As the sponsor Bussey is responsible for the supervision of all team members during afterschool practices and games. The team practices at a minimum of three (3) days a week and performs at Saturday football games. This requires the team members to remain in the administrative offices on game days and special events.

66.    There is a bathroom that includes a shower in the office suite, so the team members will, at times, use Dr. Brown's office to prepare and dress for activities, with Principal's permission.

67.    The Pom Team is not permitted to go to the locker room as there are opposing team members utilizing the space. Bussey must supervise them from the time they arrive until they are picked up by their parents, so Bussey ensures that they are never out of sight outside of the Principal's Suite.

68.    Bussey is a dedicated employee of Prince George's County School Board who takes her job duties and responsibilities seriously. Bussey normally works in excess of 10 to 12 hours daily to ensure the resolution of all of the needs of the current day.

69.    Bussey goes above and beyond to provide excellent customer service to the students, staff and community at-large as she truly cares about the wellbeing and success of all students.

70.    Due to Bussey often spending long hours in the office there have been instances in which Bussey has used Dr. Brown's office to change clothes for events or activities.

71.    On Friday, April 13, 2018, an Assistant Principal Miller informed Holland and Bussey that there was a camera directed at the principal's desk, which turned out to be hidden inside of a smoke detector to hide its existence.

72.    Upon further investigation, it was determined that the camera had been recording since July/August, 2016. The camera had been placed in the office by PGCPS security.

73.    Upon learning of the hidden surveillance camera placed in the Principal's Office, Bussey has felt violated, victimized, and humiliated after realizing that persons have been filming her actions for over two years, but particularly saddened and hurt that the girls on the Pom Team were put in a position to be filmed and videotaped without anyone's knowledge.

74.    The camera can be accessed remotely by anyone through outside locations simply by typing in the IP address.

75.    This incident is causing Bussey problems in her day to day activities and relationships. This incident has caused Bussey to feel uncomfortable, humiliated embarassed and unwelcome in a place she has called a second home for almost 20 years.

76.    Bussey is currently under the care of a psychiatrist and therapist for anxiety and severe depressive disorder. Bussey has been prescribed anti-depression medication.

77.    Bussey has been placed on leave until such time as her mental health providers determine that she can return to work. Bussey is anxious and paranoid, having trouble sleeping and having bursts of anger.

## Count 1- Violation of 42 U.S.C. § 1983, et seq.
### (All Defendants)

78.    Plaintiffs allege and incorporate herein by reference each and every allegation in the aforementioned paragraphs as fully set forth herein.

79.    Defendant Board was at all times relevant to this complaint, the final decision making authority for the Prince Georges County Public School System and all agencies that support the Public Schools, to include Charles H. Flowers, High School.

80.     Defendant Security Services is an agent of Defendant Board in the Prince George's County School System, at Flowers High School and at all times relevant to this action.

81.     Each Defendant's actions were done under the color of state and/or local law.

82.     An Agent of Defendant Board authorized the placement of the hidden video surveillance device in the Principal's Office of Flowers High School.

83.     An Agent of Defendant Security Systems did place the hidden video surveillance device in the Principal's Office of Flowers High School.

84.     Neither Defendant Board nor Defendant Security Services had a warrant to place this hidden surveillance device in the Principal's Office of Flowers High School.

85.     Under the color of the state and/or local law, Defendant Board did authorize the placement of the hidden surveillance camera to be hung in the private Principal's office of Flowers High School without receiving a warrant.

86.     Under the color of the state and/or local law, Defendant Security Services did hide a camera in a smoke detector and hung the detector from the ceiling corner of the private Principal's office of Flowers High School, in a device that resembled a smoke detector.

87.     Under the color of the state and/or local law, Defendant Board authorized, and Defendant Security Services placed, the hidden camera in the private Principal's Office and intentionally mislabeled the feed, "Main Lobby" so that it would be hidden from detection from staff members at Flowers High School.

88.     Under the color of the state and/or local law, Defendant Board did authorize Defendant Security Services to monitor the hidden surveillance camera placed in the private Principal's Office of Flowers High School.

89. Under the color of the state and/or local law, Defendant, Security Services did, in fact, monitor the hidden surveillance camera placed in the private Principal's Office of Flowers High School.

90. Under the color of the state and/or local law, Defendant Board did authorize this hidden camera to store video footage for over a year, well beyond the Thirty (30) day maximum, which is inconsistent with the policy of the authorized security cameras within Prince George's County Public schools that only maintain video footage for Thirty (30) days.

91. Under the color of the state and/or local law, Defendant Security Services did place and create a false name for this hidden camera to store video footage for over a year, well beyond the Thirty (30) day maximum, which is inconsistent with the policy of the authorized security cameras within Prince George's County Public schools that only maintain video footage for Thirty (30) days.

92. Defendants Board and Security Services' official policies, procedures and practices allowed for Defendant Board to authorize Defendant Security Services to violate the Plaintiffs' Constitutional rights.

93. As a direct and proximate result of the conduct alleged herein all of the Defendants deprived Plaintiffs of the following clearly established rights under the Fourth, Fifth and Fourteenth Amendments of the Constitution, which include:

    a. The right to be free from unwarranted search and seizure from a government entity under the color of the state and/or local law;

    b. The right to be free from the deprivation of life and liberty without due process of the law;

c. The right to be free from government intrusion and invasion into the privacy and personal space of Defendants and the people the Defendants were to protect;

94. As a direct and proximate result of Defendant's violations of Plaintiff's Constitutional rights, as set forth above, Plaintiffs have suffered severe personal injuries and damages.

95. As a direct and proximate result of Defendant's violations of Plaintiff's Constitutional rights, Plaintiff's have suffered, and will continue to suffer great pain, substantial and permanent emotional distress, mental anguish, loss of consortium and a diminished capacity for the enjoyment of life.

96. As a direct and proximate result of Defendant's violations of Plaintiff's Constitutional rights, Plaintiffs have undergone and will continue to undergo medical treatment; has incurred and will continue to incur medical costs and related expenses to pain and suffering, loss of earnings, loss of employment opportunities, loss of time and enjoyment from their customary leisure and recreational activities, an impairment of their customary normal activities of daily living, emotional pain and suffering, psychological and mental health injuries, leisure and recreational activities, and otherwise was hurt, injured and caused to sustain losses.

97. Due to the severity of Defendants' conduct, Plaintiffs are entitled to punitive damages.

98. Plaintiffs were not contributorily negligent.

**WHEREFORE**, Plaintiffs, Gorman Brown, Mar-c Holland and Donna Bussey, John and Jane Does respectfully prays judgment Defendant's Board of Education of Prince George's County and Security Services of Prince George's County in an amount that exceeds $75,000.00 each for Plaintiffs for damages incurred as a result of the causes of action maintained herein, notably past,

present and continuing medical bills, lost wages, pain and suffering, mental anguish, emotional distress, liquidated damages as well as punitive damages in an amount that exceeds $75,000.00 and such other relief this Court deems just and proper.

**WHEREFORE**, Plaintiffs also request that this Court grant a permanent injunction enjoining Defendants, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from the warrantless placing hidden surveillance cameras in the Principal's office and enjoin Defendants from any retaliatory disciplinary actions in the future.

## Count Two: Invasion of Privacy-Intrusion upon Seclusion
### (All Defendants)

99.     Plaintiffs allege and incorporate herein by reference each and every allegation in the aforementioned paragraphs as fully set forth herein.

100.    In or about July of 2016, Defendant Board did intentionally authorize the placement of the hidden surveillance camera to be hung in the private Principal's office of Flowers High School without receiving a warrant.

101.    In or about July of 2016, Defendant Security Services did intentionally hide a camera in a smoke detector and hung the detector from the ceiling corner of the private Principal's office of Flowers High School, in a device that resembled a smoke detector.

102.    The video feed for this illegally hidden camera was intentionally mislabeled "Main Lobby" in the system so that it would be hidden from detection from staff members at Flowers High School.

103.    Defendant Board did intentionally authorize Defendant Security Services to monitor the hidden surveillance camera placed in the private Principal's Office of Flowers High School.

104. Defendant, Security Services did, in fact, intentionally monitor the hidden surveillance camera placed in the private Principal's Office of Flowers High School.

105. Defendant Board did intentionally authorize this hidden camera to store video footage for over a year, well beyond the Thirty (30) day maximum, which is inconsistent with the policy of the authorized security cameras within Prince George's County Public schools that only maintain video footage for Thirty (30) days.

106. Defendant Security Services did intentionally place and create a false name for this hidden camera to store video footage for over a year, well beyond the Thirty (30) day maximum, which is inconsistent with the policy of the authorized security cameras within Prince George's County Public schools that only maintain video footage for Thirty (30) days.

107. The above described acts of Defendants were committed within the scope of employment under the color of the law of the State and/or local laws during a period of time where Plaintiffs were performing their job duties and/or maintained a reasonable expectation of privacy within the Principal's Office.

108. The conduct of Defendants, which constituted an intentional intrusion into the privacy of Brown, Holland, Bussey and Does is highly offensive to a reasonable person.

109. As a result of Defendant's intrusion upon Plaintiff's seclusion by Defendants, Plaintiffs suffered embarrassment, humiliation and mental distress.

110. As a direct and proximate result of Defendant's intrusion upon Plaintiff's seclusion, as set forth above, Plaintiffs have suffered severe personal injuries and damages.

111. As a direct and proximate result of Defendant's intrusion upon Plaintiff's seclusion, Plaintiffs have suffered, and will continue to suffer great pain, substantial and permanent emotional distress, mental anguish, loss of consortium and a diminished capacity for the enjoyment of life.

112.    As a direct and proximate result of Defendant's intrusion upon Plaintiff's seclusion, Plaintiffs have undergone and will continue to undergo medical treatment; has incurred and will continue to incur medical costs and related expenses to pain and suffering, loss of earnings, loss of employment opportunities, loss of time and enjoyment from their customary leisure and recreational activities, an impairment of their customary normal activities of daily living, emotional pain and suffering, psychological and mental health injuries, leisure and recreational activities, and otherwise was hurt, injured and caused to sustain losses.

113.    Due to the severity of Defendants' conduct, Plaintiffs are entitled to punitive damages.

114.    Plaintiffs were not contributorily negligent.

**WHEREFORE**, Plaintiffs, Gorman Brown, Mar-c Holland and Donna Bussey, John and Jane Does respectfully prays judgment Defendant's Board of Education of Prince George's County and Security Services of Prince George's County in an amount that exceeds $75,000.00 each for Plaintiffs for damages incurred as a result of the causes of action maintained herein, notably past, present and continuing medical bills, lost wages, pain and suffering, mental anguish, emotional distress, liquidated damages as well as punitive damages in an amount that exceeds $75,000.00 and such other relief this Court deems just and proper.

**WHEREFORE**, Plaintiffs also request that this Court grant a permanent injunction enjoining Defendants, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from the warrantless placing hidden surveillance cameras in the Principal's office and enjoin Defendants from any retaliatory disciplinary actions in the future.

## Count III- Gross Negligence
### (All Defendants)

115.     Plaintiffs allege and incorporate herein by reference each and every allegation in the aforementioned paragraphs as fully set forth herein.

116.     Defendant's owed a heightened standard of care to the Plaintiffs which they breached in a grossly negligent manner.

117.     At all times relevant hereto, Defendant Board and Defendant Security Services were assigned to Flowers High School to serve as supervise, protect and serve the students, faculty, staff, visitors, and parents. Defendants actions caused recordings to take place during the school day and periods of time where the school was properly operating in its regular course of business.

118.     At all times relevant hereto, all Defendants' actions were under the color of state and/or local law.

119.     Defendants' official practices, policies and procedures and/or authorization allowed for the placement and retention of the unwarranted, hidden recording device in violation of Plaintiff's Constitutional Rights.

120.     Defendants, Board and Security Services were aware or should have been aware that hiding a camera, without a warrant, inside a smoke detector and hiding said recording device inside the private Principal's Office was a crime: a violation of the Maryland Wiretapping and Electronic Surveillance Control Act could subject a violator to be incarcerated for up to five (5) years or paying a fine up to Ten Thousand Dollars ($10,000.00).

121.     Defendant Board knew or should have known that this placement was unlawful.

122.     Defendants Board and Security Services, respectfully, authorized the placement of the hidden camera, during the summer months, without an appropriate warrant for the intrusion upon the Plaintiff's privacy as well as placed and misnamed the hidden camera within the Flowers

High School security system when there was little to no traffic in the Principal's Office Suite to detect their clandestine activities.

123.    Defendant Security Services knew that this placement was unlawful, which is why they never received a warrant for the intrusion upon the Plaintiff's privacy and hid the presence of the hidden camera by calling the view "Main Lobby" instead of "Principal's Office."

124.    An Agent of Defendant Board, utterly indifferent to the high probability of emotional distress that the placement of the warrantless, hidden camera would create, authorized the placement of this device to spy on and record the actions within this private Principal's Office in deliberate disregard of the Plaintiff's Constitutional Rights as if Plaintiff's rights did not even exist.

125.    An Agent of Security Services, utterly indifferent to the high probability of emotional distress that the placement of the warrantless, hidden camera would create, placed the camera inside a smoke detector and hid the camera from the staff by intentionally misnaming the device to spy on and record the actions within this private Principal's Office in deliberate disregard of the Plaintiff's Constitutional Rights as if Plaintiff's rights did not even exist.

126.    Defendants' conduct to was unwarranted, intentional and so reckless or utterly indifferent to the Constitutional Rights of the Plaintiff's that Defendant's conduct acted as if Plaintiffs' Constitutional Rights did not even exist.

127.    Defendant's conduct was undertaken deliberately and with actual malice for the Constitutional Rights of Plaintiffs.

128.    As a direct and proximate result of Defendant's malicious conduct alleged herein, Plaintiffs suffered, and will continue to suffer severe and personal injuries and damages, physical

pain, severe, substantial and permanent emotional distress and mental anguish, loss of consortium and diminished capacity for the enjoyment of life.

129.    As a direct and proximate result of Defendant's malicious conduct, as set forth above, Plaintiffs have suffered severe personal injuries and damages.

130.    As a direct and proximate result of Defendant's malicious conduct, Plaintiffs have suffered, and will continue to suffer great pain, substantial and permanent emotional distress, mental anguish, loss of consortium and a diminished capacity for the enjoyment of life.

131.    As a direct and proximate result of Defendant's malicious conduct, Plaintiffs have undergone and will continue to undergo medical treatment; has incurred and will continue to incur medical costs and related expenses to pain and suffering, loss of earnings, loss of employment opportunities, loss of time and enjoyment from their customary leisure and recreational activities, an impairment of their customary normal activities of daily living, emotional pain and suffering, psychological and mental health injuries, leisure and recreational activities, and otherwise was hurt, injured and caused to sustain losses.

132.    Due to the severity of Defendants' malicious conduct, Plaintiffs are entitled to punitive damages.

133.    Plaintiffs were not contributorily negligent.

**WHEREFORE**, Plaintiffs, Gorman Brown, Mar-c Holland and Donna Bussey, John and Jane Does respectfully prays judgment against Defendant in an amount that exceeds $75,000.00 for Plaintiffs unpaid compensation and benefits, back pay, liquidated damages as well as punitive damages in an amount that exceeds $75,000.00 and such other relief this Court deems just and proper and to which Plaintiff is entitled damages, attorney's fees, and costs of the action.

**WHEREFORE**, Plaintiffs also request that this Court grant a permanent injunction enjoining Defendants, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from the warrantless placing hidden surveillance cameras in the Principal's office and enjoin Defendants from any retaliatory disciplinary actions in the future.

## Count IV- Violation of Maryland Declaration of Rights Articles 24 and 26
### (All Defendants)

134. Plaintiffs allege and incorporate herein by reference each and every allegation in the aforementioned paragraphs as fully set forth herein.

135. The acts of all Defendants alleged herein constituted a violation of the rights guaranteed to Plaintiffs under Articles 24 and 26 of the Maryland Declaration of Rights.

136. An Agent of Defendant Board authorized the placement of the hidden video surveillance device in the Principal's Office of Flowers High School.

137. An Agent of Defendant Security Systems did place the hidden video surveillance device in the Principal's Office of Flowers High School.

138. Neither Defendant Board nor Defendant Security Services had a warrant to place this hidden surveillance device in the Principal's Office of Flowers High School.

139. Under the color of the state and/or local law, Defendant Board did authorize the placement of the hidden surveillance camera to be hung in the private Principal's office of Flowers High School without receiving a warrant.

140. Under the color of the state and/or local law, Defendant Security Services did hide a camera in a smoke detector and hung the detector from the ceiling corner of the private Principal's office of Flowers High School, in a device that resembled a smoke detector.

141. Under the color of the state and/or local law, Defendant Board authorized, and Defendant Security Services placed, the hidden camera in the private Principal's Office and intentionally mislabeled the feed, "Main Lobby" so that it would be hidden from detection from staff members at Flowers High School.

142. Under the color of the state and/or local law, Defendant Board did authorize Defendant Security Services to monitor the hidden surveillance camera placed in the private Principal's Office of Flowers High School.

143. Under the color of the state and/or local law, Defendant, Security Services did, in fact, monitor the hidden surveillance camera placed in the private Principal's Office of Flowers High School.

144. Under the color of the state and/or local law, Defendant Board did authorize this hidden camera to store video footage for over a year, well beyond the Thirty (30) day maximum, which is inconsistent with the policy of the authorized security cameras within Prince George's County Public schools that only maintain video footage for Thirty (30) days.

145. Under the color of the state and/or local law, Defendant Security Services did place and create a false name for this hidden camera to store video footage for over a year, well beyond the Thirty (30) day maximum, which is inconsistent with the policy of the authorized security cameras within Prince George's County Public schools that only maintain video footage for Thirty (30) days.

146. Defendants Board and Security Services' official policies, procedures and practices allowed for Defendant Board to authorize Defendant Security Services to violate the Maryland's Declaration of rights.

147. As a direct and proximate result of Defendant's violation of Articles 24 and 26 of the Maryland Declaration of Rights alleged herein, Plaintiffs suffered, and will continue to suffer severe and personal injuries and damages, physical pain, severe, substantial and permanent emotional distress and mental anguish, loss of consortium and diminished capacity for the enjoyment of life.

148. As a direct and proximate result of Articles 24 and 26 of the Maryland Declaration of Rights, as set forth above, Plaintiffs have suffered severe personal injuries and damages.

149. As a direct and proximate result of Articles 24 and 26 of the Maryland Declaration of Rights, Plaintiffs have suffered, and will continue to suffer great pain, substantial and permanent emotional distress, mental anguish, loss of consortium and a diminished capacity for the enjoyment of life.

150. As a direct and proximate result of Articles 24 and 26 of the Maryland Declaration of Rights, Plaintiffs have undergone and will continue to undergo medical treatment; has incurred and will continue to incur medical costs and related expenses to pain and suffering, loss of earnings, loss of employment opportunities, loss of time and enjoyment from their customary leisure and recreational activities, an impairment of their customary normal activities of daily living, emotional pain and suffering, psychological and mental health injuries, leisure and recreational activities, and otherwise was hurt, injured and caused to sustain losses.

151. Due to the severity of Articles 24 and 26 of the Maryland Declaration of Rights, Plaintiffs are entitled to punitive damages.

152. Plaintiffs were not contributorily negligent.

**WHEREFORE**, Plaintiffs, Gorman Brown, Mar-c Holland and Donna Bussey, John and Jane Does respectfully prays judgment against Defendant in an amount that exceeds $75,000.00

for Plaintiffs unpaid compensation and benefits, back pay, liquidated damages as well as punitive damages in an amount that exceeds $75,000.00 and such other relief this Court deems just and proper and to which Plaintiff is entitled damages, attorney's fees, and costs of the action.

**WHEREFORE**, Plaintiffs also request that this Court grant a permanent injunction enjoining Defendants, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from the warrantless placing hidden surveillance cameras in the Principal's office and enjoin Defendants from any retaliatory disciplinary actions in the future.

### Count V- Respondeat Superior
### (All Defendants)

153.    Plaintiffs allege and incorporate herein by reference each and every allegation in the aforementioned paragraphs as fully set forth herein.

154.    The above referenced acts of Defendants were committed while each was acting as an actual and/or apparent agent, servant, employee, representative and/or independent contractor of Defendant Board.

155.    The above referenced acts of Defendants Board and Defendant Security Services were committed within the course and scope of their actual and/or apparent agency and/or employment while performing services for and/or furthering the business interests of Defendant Police Department.

156.    As the Principal for Defendants, the agent authorizing for the unlawful placement of the hidden camera and the Defendant Security Services agent who placed the unlawful hidden camera, each of whom were actual or apparent agents, servants, employees and/or independent contractors within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

157. As a direct and proximate result of Defendant's conduct alleged herein, Plaintiffs suffered, and will continue to suffer severe and personal injuries and damages, physical pain, severe, substantial and permanent emotional distress and mental anguish, loss of consortium and diminished capacity for the enjoyment of life.

158. As a direct and proximate result of Defendant's conduct, as set forth above, Plaintiffs have suffered severe personal injuries and damages.

159. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered, and will continue to suffer great pain, substantial and permanent emotional distress, mental anguish, loss of consortium and a diminished capacity for the enjoyment of life.

160. As a direct and proximate result of Defendant's conduct, Plaintiffs have undergone and will continue to undergo medical treatment; has incurred and will continue to incur medical costs and related expenses to pain and suffering, loss of earnings, loss of employment opportunities, loss of time and enjoyment from their customary leisure and recreational activities, an impairment of their customary normal activities of daily living, emotional pain and suffering, psychological and mental health injuries, leisure and recreational activities, and otherwise was hurt, injured and caused to sustain losses.

161. Due to the severity of Defendants' conduct, Plaintiffs are entitled to punitive damages.

162. Plaintiffs were not contributorily negligent.

**WHEREFORE**, Plaintiffs, Gorman Brown, Mar-c Holland and Donna Bussey, John and Jane Does respectfully prays judgment against Defendant in an amount that exceeds $75,000.00 for Plaintiffs unpaid compensation and benefits, back pay, liquidated damages as well as punitive

The Tyrone Law Group, LLC
9701 Apollo Drive, Suite 100
Largo, Maryland 20774



1000   20772

U.S. POSTAGE
PAID
UPPER MARLBORO, MD
20774
AUG 14, 18
AMOUNT

$8.46

R2305H128749-25

CERTIFIED MAIL



7016 0910 0001 9422 3474

Shauna Garlington Battle, Esq.
Office of General Counsel
Sasscer Admin. Bldg., Rm. 201F
14201 School Lane
Upper Marlboro, MD 20772

damages in an amount that exceeds $75,000.00 and such other relief this Court deems just and proper and to which Plaintiff is entitled damages, attorney's fees, and costs of the action.

**WHEREFORE**, Plaintiffs also request that this Court grant a permanent injunction enjoining Defendants, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from the warrantless placing hidden surveillance cameras in the Principal's office and enjoin Defendants from any retaliatory disciplinary actions in the future.

### JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: June 27, 2018

Respectfully submitted,

Erick R. Tyrone, Esq.
The Tyrone Law Group, LLC
9701 Apollo Drive, Suite 100
Largo, Maryland 20774
(301) 358-6664 (Phone)
(240) 582-9149 (Fax)
TYRONE@TYRONELAWGROUP.COM
*Counsel for Plaintiffs*